Battle, J.
 

 This is an appeal from an interlocutory order from the Court of Equity, for the county of Wake, and in deciding upon it, we can take into consideration only the question which is presented by the record of the pleadings and proceedings in the cause. A bill of exceptions, or a case stated by the presiding Judge, in the nature of a bill of exceptions, is unknown to, and inadmissible in an appeal, or any proceeding in the nature of an appeal, from an inferior to a Superior court of chancery.
 

 It was introduced into trials in courts of law by the statute
 
 *96
 
 of 13 Ed. 1 cli. 31, was continued in our revised statutes of of 1836, (Rev. Stat. cli. 31, sec. 103,) and is contained in tlie Revised Code, ch. 31, sec. 9, but it has never been applied to the proceedings of a court of equity, either by statute, or by the practice of the court. "We do not, therefore, feel ourselves at libeily to notice the statement of the Judge, which is attached to the transcript of the record, in this case, but must confine our attention, altogether, to the questions which
 
 the
 
 pleadings and proceedings present for our determination.— From these, it appears that a bill was filed in the court of equity for the county of "Wake, to enjoin the collection of a sealed note made by the plaintiff to one of the defendants, a fiat for an injunction was made by a Judge in vacation, upon which a writ of injunction issued ; at the proper time the defendants filed answers, and thereupon moved for a dissolution of the injunction, which was refused, and the injunction continued to the hearing, and they appealed from the interlocutory order to the Supreme Court, which Court declared there was no error in the order appealed from, and this was certified to the court below. The record of the latter court then states as follows:
 

 “This.cause coming on, motion is made by the plaintiff to set the cause down for hearing upon the bill and answers, and immediately thereafter, motion was made by the defendants -to amend their answers; and the motion of the plaintiff -was disallowed, and the motion of the defendant is allowed; and it is ordered by the Court that the defendants may amend their answers, from -which order of the Court, the plaintiff craved an appeal to the Supreme Court, which is granted by his Honor; the plaintiff filing immediately in court, his bond for the appeal, which is approved by his Honor.”
 

 The "question which is thus presented upon the record, is whether the order of the Court allowing the defendants to amend their answers was, under the circumstances, a proper order; and, preliminary to that, is another question, which is, whether the order was not a discretionary one, into the propriety of which, this Court cannot enquire. Upon the question of
 
 *97
 
 the power of tins Court to review the order from which the appeal was taken, we have no doubt. The 23d section of the 4th chapter of the Revised Code, which authorises the Judge of a court of equity to allow an appeal to the Supreme Court from an interlocutory order, is certainly broad enough in its terms to embrace the present case, whether the order was made in the exercise of a discretionary power or not. But it is argued that the allowance of an appeal from an interlocutory order of the superior court of law, is embraced in the same section, and is given in precisely the same terms, and yet it has always been held that the Supreme Court cannot re view,, upon an appeal, the exercise of a purely discretionary power in the superior court. That is undoubtedly true, and yet it is equally well settled that the superior court will review, upon an appeal, a discretionary order of the county court, though tiie right of appeal is given in terms not more comprehensive-than in the case of ati appeal from the superior to the Supreme Court. The distinction, and the reason for it, are clearly pointed out in the arguments of the plaintiff’s counsel. In appeals from the superior court of law, the Supreme Court is strictly an appellate tribunal, and can review only questions of law, as if they were brought- before it by a writ of error. Hence, when the question decided, in the court below, is one of' discretion for the Judge, there cannot be any error in law, because the Supreme Court has no means of ascertaining whether the discretion was properly exercised; or not. But the superior court is not solely an appellate court with power to review and correct the errors of the- county court, in matters of law only; on the contrary, an appeal from the county to the superior court, may take up the whole cause to be heard
 
 de
 
 novo, upon matters of fact, as well as matters of law. The latter may examine testimony, if necessary, in every case, even those in which there may be an appeal from an interlocutory order, which does not take up the whole cause; and it has every means of deciding, which could be had by the county court. Hence, it has been allowed, in every instance, to review orders of the county court which have always been
 
 *98
 
 deemed discretionary. Strongly analogous to this, is the relation between the Supreme Court and the court of equity, as established by the statute law of this State. In matters of equity, the former is not solely an appellate court to correct errors of law. Causes may be removed into it from the latter, to be heard for the first time, upon questions of fact, as well as of law; and, in appeals from the final decree of the court of equity, the causes are heard in the Supreme Court, in the same way. The Supreme Court has, therefore, the same materials for forming a correct judgment, as the court of equity, in every case, and upon every question, whether discretionary or otherwise. Hence, we conceive, that every order of the court of equity, by which the
 
 rights of the parties
 
 may be affected, may be reviewed in the Supreme Court. There may be, indeed, some orders of a discretionary kind which do not affect the merits of the cause, as, for instance, an order for its continuance, or for giving time to a defendant to file his answer, from which no appeal would be entertained by the Supreme Court, as, in like case, no appeal would lie from the county to the superior court; but from all interlocutory orders which do or may affect the merits of the cause, an appeal may be taken from the court of equity to the Supreme Court, and the question, whether one of law or fact, will be there considered, and either reversed or affirmed. In every such case, it will be found that the question, though called discretionary, is not strictly1- so, but is one which ought to be decided upon the authority of established principles, or by the settled course and practice of the Court.
 

 Having ascertained that we have the power to entertain the appeal, and to review the interlocutory order from which it is taken, we have no hesitation in saying that the order for the amendment of the defendants’ answer was, under the circumstances, improper, and ought to be reversed. In considering this subject, we must bear in mind, that in questions of pleading and practice, our courts of equity, are to be governed by the rules of the English Court of Chancery, except where such rules have been abrogated, altered, or modified by our statute
 
 *99
 
 law, or, where our courts, themselves, have been compelled to vary them, for the purpose of adapting them to their peculiar organization. In tire question of allowing a defendant to amend his answer, we are not aware of any established innovation by our courts, upon the practice in England. Yery few cases are to be found, in our Eeports, where the subject is mentioned, at all; and, in those, it is merely said, or intimated in general terms, that the courts of equity have the power to allow amendments in answers; (see
 
 Williams
 
 v.
 
 Williams,
 
 2 Hay. Rep. 220, and
 
 Daggett
 
 v.
 
 Hogan,
 
 5 Ire. Eq. Rep. 347.) But the rules and regulations under which, and the extent to which, they will be allowed, are not specified. In the absence of cases decided, in our own courts, then, we must resort to the English cases for information on the subject. Erom a note to the case of
 
 Livesay
 
 v.
 
 Wilson,
 
 1 Ves. and Beame’s Oh. Rep. 149, we learn that, in cases of mistake, defendants have been indulged in amending their answers:
 

 1-. In small and immaterial matters. 2. Where a mistake had crept into the engrossment. 3. Where new matter has been discovered since the original answer was put in. 4. In case of surprise. And 5. In mistakes of names. But where the defendant mistook, first, the law; secondly, where he had unintentionally perjured himself, and an indictment was suspended over him; and thirdly, where from the circumstance, that at the time of the answer put in, the defendant had not set forth his defense from an inability to state it with precision, the court has refused him the indulgence of amending. Erom the same note, we learn,- that
 
 “
 
 as to the
 
 mode
 
 of amending, the practice formally was, to allow the answer to be taken off the file, and a new answer to be put on it. But the present practice is understood to be to permit a supplemental answer to be filed, leaving to the parties the effect of what was originally sworn, with the explanation of the subsequent answer.”
 

 Erom these rules, it will be seen that the English practice in allowing defendants to amend their answers, is very strict, and that the courts never lend a willing ear to such applications. Thus, in the case of
 
 Livesay
 
 v.
 
 Wilson, ubi supra,
 
 
 *100
 
 where a defendant had' stated in his answer that he had1 taken possession of the whole of certain property, and afterwards applied for leave to amend, upon the ground of a mistake in saying that he had taken possession of
 
 the
 
 whole, when in fact he had taken possession of a part, only, of the property, the Lord Chancellor, Ekdon, said, that as the faet was a very material one, he would not permit the amendment to be made— “unless the defendant will tell me, on his oath, that, when he swore to his original answer, he meant to swear in the sense in which he now desires to be at liberty to swear; if he did not, I will not suffer him to avail himself of the faet, as he now represents it.”
 

 The courts of equity in this eountry have followed the English practice, whenever the the question of permitting amendments to answers has come before them. The whole subject was considered fully, and with his usual ability, by Judge-Story, in the case of
 
 Smith
 
 v. Babcock, 3 Sumner’s Rep. 583. In the course of his opinion, he enunciated the following propositions : In matters of form, or mistakes of dates, or verbal inaccuracies, courts of equity are very indulgent in allowing amendments of auswers. But they are slow to allow' amendments in material facts, or to change essentially the grounds taken in the original answer.
 

 Where the object is to let in new facts and defences, wholly dependant upon parol evidence, the reluctance of the court to-allow amendments, is greatly increased, since it would encourage carelessness and indifference, in making answers, and open the door to the introduction- of testimony manufactured for the-occasion. But where the facts sought to be introduced, are written documents or papers, which have been omitted by accident or mistake, there the common reason does not apply in its full force; for such papers and documents cannot be made to speak a different language from that which originally belonged to them.
 

 The whole matter is in the discretion of the court; but before the amendments to the answers are allowed, the court should be satisfied, that the reasons assigned for the applica
 
 *101
 
 ticn, are cogent and satisfactory ; that the mistakes to be corrected, or facts to be added, are made highly probable, if not certain; that they are material to the merits of the case in controversy; that the party has not been guilty of gross negligence; and that the mistakes have been ascertained; and the new facts have come to the knowledge of the party, since the original answer was put in and sworn to. See also,
 
 Bowen v.
 
 Cross, 4 John. Ch. Rep. 375. In all the cases where material amendments to the answers are proposed to be made, it will be seen that the defendant most support his application by an affidavit, wherein he must set forth the cause of the omission or mistake, and the mistakes which he wishes to correct, or the facts which he desires to add. In the case now under consideration, nothing of this kind was done, and yet it'is difficult to imagine one, in which all the safe-guards, which the courts of eqnitj' have thrown around the amendments of answers, ought more strictly to have been attended to. The Supreme Court had decided that, upon the answers as they stood, the plaintiff was entitled to his injunction. It is manifest that no amendments could have been of any use to the defendants, unless the answers could, thereby, introduce and set up new defences, lint, although such was the state of the case, the Court below, upen a mere motion, unsupported by any affidavit, and without being informed, so far as we can see, why any amendment was wanted, or what was wanted, allowed the defendant to amend,
 
 ad libitum.
 
 Such an order cannot be supported, and must bo reversed. If proper grounds be laid for the application, according to the well established rules of practice on the subject, the court of equity, from which this appeal is taken, will, no doubt, allow such amendments to be made to the answers, or rather supplemental answers to he put in, as under all the circumstances of the case, are just and proper.
 

 The case of
 
 Bowen
 
 v.
 
 Cross,
 
 referred to above, was like the present, an application to amend an answer, after an unsuccessful motion to dissolve an injunction. The Chancellor, Kent, allowed an additional or supplemental answer to be put in, but it was done upon an affidavit of the solicitor, who drew
 
 *102
 
 the answer, that the matter desired to be inserted in the amendment, was omitted by a mistake of his own, and not of the defendant. The Chancellor, after referring to the cases decided in the English Court of Chancery, upon the question, concludes thus: “ There can be no doubt that the application ought to be narrowly and closely inspected, and a just and necessary case clearly made out. In the present case, the defendant moves to make sundry amendments, but there is no ground for the indulgence, except as to the mistake sworn to have arisen on the engrossment of the answer, and not discovered until it was filed; and as to the omission of the solicitor to make the schedule, referred to in his affidavit, a substantial part of the answer. The defendant handed the document to the solicitor when he was to prepare the answer; and, no doubt, it was his intention that it should have been used in a way the most fit and proper for his defence. The omission to annex it, may be imputed to a mistake of the solicitor; and, after some hesitation, we are inclined to permit a supplemental • answer to be filed iu respect to those two omissions, and
 
 as to 'them only.” We
 
 have thus for our guidance, the opinions and ■practice of three of the most eminent equity Judges of mod•ern times; and, by them, we are taught, that while supplemental answers may be put in by amendment, at almost any time during the progress of the cause, the permission to do so, is given with extreme caution, and never, in any substantial matter, except upon affidavit. The order made in the Court below is reversed, and this opinion will be certified as the law directs.
 

 Pick Curiam. Order reversed.